## Staunton

ARLINGTON YELLOW CAB COMPANY, INC. v. TRANSPORTATION, INC.
AND BERT W. JOHNSON, COUNTY MANAGER OF ARLINGTON COUNTY.

September 9, 1966.

Record No. 6234.

Present, All the Justices.

L. *Lee Bean* (*Bean & Sizemore*, on brief), for the plaintiff in error.

*John L. Melnick* (*William J. Hassan, Commonwealth's Attorney*, on brief), for the defendants in error.

EGGLESTON, C. J., delivered the opinion of the court.

Arlington Yellow Cab Company, Inc., filed in the court below a petition against Transportation, Inc., and Bert W. Johnson, County Manager of Arlington county, praying for a judgment declaring illegal and invalid a certificate of convenience and necessity which the county manager had issued on April 22, 1964 to Transportation, Inc., for the operation of thirty taxicabs in Arlington county, and for an injunction restraining Transportation from operating under the certificate. The defendants filed separate demurrers which were sustained and the petition dismissed. We granted the complainant a writ of error. The sole issue on appeal is whether the petition states a cause of action and should not have been dismissed on demurrer.

The pertinent allegations of the petition may be summarized thus:

(1) Yellow Cab has been and presently is engaged in the operation of a taxicab business with seventy-five cabs in operation, in Arlington county, under a certificate of public convenience and necessity heretofore issued by the county manager.

(2) On or about April 22, 1964 the county manager, acting pursuant to § 25-6.4 of the Arlington County Code, issued a certificate of public convenience and necessity to Transportation to operate thirty taxicabs in Arlington county.

(3) The action of the county manager in issuing the certificate to Transportation "was premature" in that § 25-6.6 of the County Code requires him to make a survey and acquire certain information "on July 1 of each year" before determining whether the public convenience and necessity require the number of authorized vehicles to be increased or decreased, and that this was not done.

(4) The action of the county manager "was unconstitutional as to" the complainant in that although its business would be "adversely affected by the issuance of said certificate" to Transportation, the complainant "was not afforded a full hearing before the county manager" as required by the due process clauses of the State and Federal Constitutions.

(5) The action of the county manager "in issuing said certificate was arbitrary, capricious and unreasonable in that there was insufficient evidence on which" he "could find, pursuant to Section 25-6.4 of said Taxicab Ordinance, that the public convenience and necessity required the operation of the thirty (30) taxicabs designated in the application."

■ In its memorandum opinion sustaining the demurrers, the lower court pointed out that in acting on the application of Transportation for the certificate the county manager was not required to follow the provisions of § 25-6.6, with which the petition alleged he had not complied, because that section related to the "amendment of existing certificates;" that since Transportation had applied for a "new certificate" the county manager was required to follow § 25-6.4; and that inasmuch as there was no allegation that he had failed to follow the provisions of the latter section, the petition failed to state a cause of action and should be dismissed. We agree with the lower court's interpretation and application as to these sections of the County Code.

Chapter 25 of the County Code (§ 25-1 ff.), which is before us as an original exhibit, provides for the regulation and control of the operation of taxicabs for hire in Arlington county.

Section 25-6.1 requires the issuance of a certificate of public convenience and necessity by the county manager in order that one may engage in the taxicab business.

Section 25-6.2 provides for the filing of an application for such certificate and specifies what information must be detailed therein.

Section 25-6.4 provides for the determination by the county manager of the public convenience and necessity for such certificates and the issuance of them by him. The material portions of this section are printed in the margin.[1]

---

[1]
".4 Determination of Public Convenience & Necessity; Issuance of Certificates.

\* \* \* \*

"(b) The county manager shall determine whether public convenience and necessity requires the operation of taxicabs designated in the application. In making this determination the following shall be considered:

"(1) The adequacy of existing taxicab service and other forms of transportation for passengers, already in existence.

"(2) The probable permanence and quality of the service offered by the applicant.

"(3) The character of taxicab service proposed by the applicant as demonstrated by: The proposed use if any of a radio communications system; the proposed

Section 25-6.6, which provides for the amendment to a certificate heretofore granted, is likewise printed in the margin.[2]

use of terminals and private and public hack stands; the time of day and night when service is to be offered; the proposed number and character of vehicles.

"(4) The financial status, character and responsibility of the applicant as demonstrated by: The applicant's ability to provide, maintain and operate the number of vehicles proposed to be operated in accordance with the character of service proposed in the application; the applicant's criminal and traffic record; the applicant's credit record, if any.

"(5) The experience of the applicant in taxicab operations as an owner or manager or as a taxicab driver.

"(c) The county manager shall, prior to making his determination, request a recommendation from the Public Utilities Commission of Arlington County. The county manager shall furnish to the Commission all information available to him concerning the application for a certificate under consideration and the Public Utilities Commission shall make its recommendation to him within forty-five (45) days.

"(d) To assist him in making a finding as to whether public convenience and necessity requires the operation of the taxicabs for which an application has been filed, the county manager upon receipt of an application for a certificate shall provide each certificate-holder with an opportunity to express an opinion about the application. He shall notify each certificate-holder that an application for a certificate has been filed. The certificate-holder may submit his opinion in writing within thirty (30) days of the date of request. Upon a showing of demand by certificate-holders or the general public the county manager may request the Public Utilities Commission to hold a public hearing on the application.

"(e) After consideration of the factors prescribed in this chapter, the county manager may grant a certificate for the number of vehicles applied for, or for a lesser number than that requested, or the county manager may refuse to issue the certificate. * * *"

(2)

".6 *Amendment to Certificate Authorization.*

"(a) The county manager shall have the authority to grant additional vehicle authorizations to certificate-holders based on his determination of the public convenience and necessity.

"(b) The county manager shall have the authority to rescind vehicle authorizations which have been granted to certificate-holders based on his determination of public convenience and necessity.

"(c) On July 1 of each year the county manager shall issue an order which shall include:

"(1) A statement as to economic condition of the industry and such other factors as a determination of public convenience and necessity may require.

"(2) The number of vehicles by which the industry shall be increased or decreased, or, that no increases or decreases should be made until July 1 of the following year.

"(d) The Public Utilities Commission shall provide the county manager with such data and recommendations as he may require to assist him in his determination of the economic condition of the industry.

"(e) Any certificate-holder may apply for any or all of the additional vehicles authorized. Application shall be made under oath by the certificate-holder upon forms provided by the county.

"(f) The county manager shall allocate any or all of the additions or reductions

It is clear, we think, that § 25-6.4 provides for the determination by the county manager of the public convenience and necessity for the issuance of a new certificate. It provides that he shall determine whether public convenience and necessity require the operation of taxicabs designated in the application and details the factors which he shall consider in making this determination.

Subsection (d) provides that to assist the county manager in making a finding as to whether public convenience and necessity require the operation of taxicabs for which an application has been filed, he shall give to each present certificate holder "an opportunity to express an opinion about the application." The record here shows that before acting on the application of Transportation the county manager gave Yellow Cab such an opportunity and it filed a written "opinion" pointing out why the application should be denied.

Subsection (d) further provides that upon "a showing of demand" by the holders of certificates then in effect "or the general public," the county manager may request the Public Utilities Commission of the county to hold a public hearing on the application. There is no allegation in the petition that Yellow Cab made a demand for such hearing. Evidently it rested its case on its written "opinion" protesting the granting of the certificate.

It is equally clear that § 25-6.6 applies to amendments to certificates heretofore granted. Subsection (a) provides that the county manager "shall have the authority to grant additional vehicle authorizations to certificate-holders based on his determination of the public convenience and necessity." Subsection (b) gives the county manager the authority to rescind vehicle authorizations which have been granted.

In order that the county manager may act intelligently on proposed amendments, he is required by subsection (c) "on July 1 of each year" to inquire into the economic condition of the industry,

in number of authorized vehicles to any or all of the applicants based on his determination of the following factors:

"(1) The relative age of the certificate-holder's existing fleet;
"(2) The extent and character of service offered by the certificate-holder;
"(3) The use of radio equipment in the certificate-holder's fleet;
"(4) The maintenance and condition of the certificate-holder's fleet;
"(5) The responsibility demonstrated by the certificate-holder and his drivers in regard to the provisions of the taxicab regulations.

"(g) Upon amendment as to the number of vehicles and upon the surrender of the existing certificate, the county manager shall issue a new certificate to the certificate-holder."

the number of vehicles by which the industry shall be increased or decreased, and whether there should be any increases or decreases.

Subsection (f) provides that the county manager shall allocate any or all of the "additions or reductions" in the number of authorized vehicles based on his determination of certain stated factors.

The allegation in the complaint that the action of the county manager was premature and that he had no authority to act on the application of Transportation until after July 1, is predicated upon the mistaken premise that the consideration of this application was controlled by the provisions of § 25-6.6. But that premise is unsound because, as has been said, in considering this application, which was for a new certificate, the county manager was required to proceed under § 25-6.4, and that section contains no such provision postponing his action until after he had made the required survey on July 1.

It is next said that the action of the county manager was "unconstitutional" as to the complainant, for the reason that although its business would be adversely affected by the issuance of a new certificate the complainant was not afforded a full hearing before the county manager. Assuming, but not deciding, that the complainant was constitutionally entitled to a hearing on Transportation's application, subsection (d) of § 25-6.4 provides for such a hearing before the Public Utilities Commission of the county upon the demand of the complainant certificate holder. Since there was no such demand, the commission had no hearing.

The final contention of the complainant Yellow Cab is that the allegation set out in paragraph (5), *supra*, is sufficient to withstand a demurrer. The substance of that allegation is that the action of the county manager in issuing the certificate to Transportation "was arbitrary, capricious and unreasonable in that there was insufficient evidence" to support his finding that the public convenience and necessity required the operation of the thirty taxicabs designated in the application. This contention is without merit.

The evidence upon which the county manager acted is not shown in the record. Nor is there any allegation as to what evidence or facts were before him. Hence, the allegation that there was insufficient evidence to support his finding is merely the pleader's conclusion of law, deduced from facts not stated, that the county manager acted illegally or improperly. It is well settled that while a demurrer admits as true all averments of material facts which are sufficiently pleaded, it does not admit the correctness of the conclusions of law

stated by the pleader. Burks Pleading and Practice, 4th Ed., § 213, p. 353; 6 Mich. Jur., Demurrers, § 28, pp. 26, 27. Nor does a demurrer admit "inferences or conclusions from facts not stated." 71 C. J. S., Pleading, § 261 d, pp. 528, 529. See also, 41 Am. Jur., Pleading, § 243, pp. 461, 462. Such is the situation here.

The judgment of the lower court sustaining the demurrers to and dismissing the petition is

*Affirmed.*